**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVIS PICKERING & CO., INC.,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | **No. 22-1837** |
| **v.** | : | |
| | : | |
| **WORLEY FIELD SERVICES, INC.** | : | |
| **Defendant and Third-Party Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BRASKEM AMERICA, INC.** | : | |
| **Third-Party Defendant.** | : | |

**<u>MEMORANDUM</u>**

**Schiller, J.**                                                                                           **February 22, 2023**

Plaintiff Davis Pickering & Co., Inc. ("DPC") was a subcontractor to Defendant/Third-Party Plaintiff Worley Field Services, Inc. on an electrical project for Third-Party Defendant Braskem America, Inc. When the project was completed, DPC asserted a claim against Worley, seeking to recover over $1 million in additional labor costs it allegedly incurred on the project due to COVID-19-related delays. Worley denied DPC's claim pursuant to a "no damage for delay" clause in its subcontract with DPC, leading DPC to sue Worley for breach of contract and unjust enrichment. Worley then filed a Third-Party Complaint against Braskem for breach of contract and a declaratory judgment, seeking defense, indemnification, and reimbursement of Worley's legal fees and the costs incurred in defending against DPC's claims.

Braskem now moves to dismiss Worley's Third-Party Complaint against it pursuant to Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). It argues there is no case or controversy between Braskem and Worley because Worley's claims are not ripe. Even if they are, Braskem contends Worley fails to state a claim against it because the contract between Braskem and Worley

does not require Braskem to defend, indemnify, or reimburse Worley for DPC's claims. For the reasons that follow, the Court denies Braskem's motion.

## I.   <u>BACKGROUND</u>

Braskem owns and operates a manufacturing facility in Kenova, West Virginia. (Third-Party Compl., ECF 12, ¶ 9.) On January 15, 2019, it entered into a Master Contract for Engineering, Procurement, Construction Management and Construction Services ("Master Contract") with Worley[1] for services related to the design and installation of new electrical infrastructure at the facility (the "Project"). (*Id.* ¶ 10.)

The Master Contract between Braskem and Worley itemizes "Other Reimbursable Costs" that Braskem must pay to Worley, including "Contractor and third party lawyers' fees, court costs and related litigation expenses when incurred on behalf of or for the benefit of [Braskem]" and "[l]osses, expenses and deductibles in connection with the Project and not paid by insurance or otherwise reimbursed." (*Id.* ¶ 13; *see also id.*, Ex. C (Master Contract), Schedule D-1 at ECF p. 189-90.) Section 12.9 of the Master Contract also provides that if Braskem ever directed Worley "to complete after a Force Majeure event, [Worley] shall be entitled to all reasonable and documented expenses it incurs in minimizing or mitigating the effects of the Majeure Event as set forth [t]herein, together with its demobilization, stand-by and remobilization costs, if any." (DPC Compl., ECF 1, ¶ 27.) Those costs and any adjustments to the project schedule were required to be identified in a change order. (*Id.*)[2]

---

[1]    Jacobs Field Services North America, Inc., is identified as the "Contractor" on the Master Contract, but Jacobs was renamed as Worley after a legal entity name change effective June 20, 2019. (Third Party Compl. ¶ 11.)

[2]    Section 12.4.1 of the Master Contract also obligates Braskem to "defend, indemnify and hold harmless [Worley] from and against Losses arising out of Third-Party Claims for death, personal injury or property damage to the extent caused by the deliberate, reckless or negligent

On February 28, 2019, Worley, acting as Braskem's authorized representative, entered into an Agreement for Construction Subcontractor ("Subcontract") with DPC. (Third-Party Compl., ¶ 14.) It alleges it did so "on behalf of or for the benefit of Braskem pursuant to Braskem's agreement in the Master Contract to reimburse [Worley] for all amounts owed to DPC under the Subcontract." (*Id.* ¶ 15.)

Section 8(C) of the Subcontract provides, in relevant part, that in the event DPC was delayed in performing its obligations,

> and such delay is caused by a[ ] . . . Force Majeure . . . [or] acts of civil . . . authority, and which are beyond the reasonable control of, and without any fault or responsibility on the part of [DPC], such delay shall be excused (an "Excusable Delay"), and the period of such delay shall be added to the Subcontract Schedule.

(Worley Answer to DPC Compl., Ex. A (DPC Subcontract), ECF 11 at ECF p. 26-27.) Section 8(E) of the Subcontract provides that no delay in the progress of the "Work under th[e] Subcontract, from any cause whatsoever . . . shall . . . give rise to any right to damages of any kind or nature from [Worley]." (*Id.* at ECF p. 27.) DPC "expressly acknowledge[d] and agree[d] that it shall receive no damage for delay." (*Id.*) As stated in the Subcontract, DPC's sole remedy against Worley for a delay was "the right to seek an extension in the Subcontract Schedule." (*Id.*)

Pursuant to the $14,245,754 Subcontract, DPC agreed to fabricate and install concrete, structural steel, equipment, and electrical components at the Project as the prime electrical contractor. (Third-Party Compl. ¶ 14.) DPC prepared and attached a Project schedule to the Subcontract. (*Id.* ¶ 16.) According to the schedule, DPC was to begin its work in February 2019

---

acts or omissions of [Braskem], its employees, or agents in connection with the Project." (*Id.*, Ex. C (Master Contract), § 12.4.1 at ECF p. 116; *see also* Third Party Compl., ¶ 12.) However, DPC alleges its losses were caused by COVID-19, not by death, personal injury, or property damage. (*See* DPC Compl., ¶¶ 13-22.)

and complete electrical commissioning work on or before April 23, 2020. (*Id.*) However, on March 23, 2020, Braskem halted the Project for thirty-six working days due to the COVID-19 pandemic.[3] (*Id.* ¶ 17.) DPC resumed its work on the Project on May 18, 2020. (*Id.* ¶ 18.) When it did, DPC "was not able to make nearly the same level of progress that it had pre-COVID" because of circumstances including the need to implement COVID-19 mitigation efforts. (*Id.* ¶ 17.)

Once DPC resumed work, DPC asked Braskem to pay for certain direct costs DPC incurred as a result of the pandemic. (Third-Party Compl., ¶¶ 19-20.) Braskem paid for costs including the purchase of face masks and cleaning supplies, an additional break trailer, idle equipment time, Saturday premium time, and additional management support. (*Id.* ¶¶ 19-20.) Braskem also implemented and executed a $37,000 craft retainage and $222,000 completion bonus program with those funds passing directly to DPC employees. (*Id.* ¶ 21.)

On September 29, 2020, DPC submitted a Request for Equitable Adjustment to Worley. seeking $1,110,693.25 in labor costs for 16,214.5 hours of time spent "over and above what it planned to expend on the Project" because of the COVID-19 "mandated shutdown of the Project site and the resultant need to later accelerate to recover the time lost to achieve [Braskem's] desired pre-outage completion date." (*Id.* ¶¶ 22-24.) DPC alleges Worley "summarily rejected" its claim "claiming DPC's sole remedy for the impacts due to COVID-19 was a time extension." (DPC Compl. ¶ 24.) Worley then submitted DPC's Request for Equitable Adjustment to Braskem "[i]n accordance with terms of the Master Contract . . . ." (Third-Party Compl. ¶ 27.) Braskem denied DPC's Request for Equitable Adjustment on February 9, 2021, "explaining that it was based entirely upon a non-compensable Force Majeure delay" consistent with the DPC Subcontract. (*Id.*

---

[3] DPC alleges it "was forced to shut down as a result of a government mandate concerning the Coronavirus pandemic" on or around March 26, 2020. (DPC Compl., ¶ 13.)

¶ 28.)

Because Braskem denied DPC's Request for Equitable Adjustment, DPC filed this suit against Worley for breach of contract and unjust enrichment. (*Id.* ¶ 29; *see also* DPC Compl.) Worley then filed its Third-Party Complaint asking Braskem to defend, indemnify and hold it harmless against DPC's suit. (Third-Party Compl. ¶ 30.) Worley also demanded Braskem reimburse it for attorney's fees and costs that it has and will incur in its defense of DPC's suit. (*Id.* ¶ 32.) Braskem declined to do either. (*Id.* ¶¶ 31, 33.) As a result, Worley asserted a third-party claim for breach of contract against Braskem as a Third-Party Defendant in this action (the suit filed by DPC). (*Id.* ¶¶ 37-39.) Worley also asks the Court for a declaratory judgment against Braskem finding that the Master Contract between Worley and Braskem is valid and binding, that Braskem must pay Worley "all amounts claimed by DPC to the extent awarded to DPC in the DPC action," and that, under the Master Contract, "Braskem must defend, indemnify, hold harmless or otherwise timely reimburse Worley for all attorney's fees, court costs, and related litigation expenses that Worley has incurred and may incur in connection with the DPC action" until its final conclusion. (*Id.* ¶¶ 40-44.)

DPC alleges that "[u]pon information and belief, Worley has closed out the Project with [Braskem], thereby foreclosing any avenue for financial compensation from [Braskem] for DPC's claim." (DPC Compl., ¶ 28.) Worley denies the allegation, alleging that "[n]o Project release has been signed by Worley." (Worley Answer to DPC Compl., ECF 11, ¶ 28.)

## II.   **DISCUSSION**

### A.   **Third-Party Practice is Proper**

#### a.   **Federal Rule of Civil Procedure 14**

Worley properly asserts a claim for derivative liability against Braskem under Rule 14.

Braskem argues Rule 14 does not allow its impleader because it is "not primarily liable to [DPC] for the damages sought in the underlying complaint." (Braskem Reply, ECF 26, at 2.) It argues Worley seeks "relief that is not derivative of DPC's action and Worley's claim falls outside the scope of" the Master Contract's contractual indemnification provision. (*Id*.) The Court disagrees in part.

Rule 14(a)(1) allows Worley, as a third-party plaintiff, to serve a complaint "on a nonparty who is *or may be* liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1) (emphasis added). But joinder of a third-party under Rule 14(a) is discretionary, not automatic. *See Schaffler v. McDowell Nat. Bank of Sharon*, No. 85-558, 1985 WL 17715, at *1 (W.D. Pa. Oct. 25, 1985); *see also Estate of Hennis v. Balicki*, No. 16-4216, 2019 WL 161505, at *3 (D.N.J. Jan. 10, 2019). The Court considers, among other things, "whether the third-party complaint would introduce an unrelated controversy . . . ." *Judd v. Gen. Motors Corp.*, 65 F.R.D. 612, 615 (M.D. Pa. 1974). "[A] court, called upon to exercise its discretion as to impleader, must balance the desire to avoid circuity of actions and to obtain consistent results against any prejudice that the [original] plaintiff might suffer from complications of the case." *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 439 n.6 (3d Cir. 1971); *see also Monarch Life Ins. v. Donahue*, 702 F. Supp. 1195, 1198 (E.D. Pa. 1989) ("[T]he policy underlying Rule 14 and the Federal Rules in general to facilitate judicial economy, avoid circuitous and inefficient litigation, and 'to secure the just, speedy, and inexpensive determination of every action,' compels" an "expansive," rather than "hypertechnical," reading of Rule 14.) (quoting Fed. R. Civ. P. 1)); 6 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1442 (3d Ed. 1998, Apr. 2022 Update) ("Rule 14 is intended to provide a mechanism for disposing of multiple claims arising from a single set of facts in one action expeditiously and economically.") Impleader under Rule 14(a) is not proper when

the claim against the impleaded defendant is "separate or independent from the main action . . . ." *FDIC v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994) (citations omitted). The claim must be "in some way dependent on" the main claim's outcome or the third-party defendant must be "secondarily liable to" the third-party plaintiff. *Id.* Rule 14(a) does not permit a party "to plead a claim of 'it was him, not me' . . . ." *Bernard v. Air Vent, Inc.*, No. 17-2361, 2019 WL 144852, at *2 (M.D. Pa. Jan. 9, 2019).

While joinder is not appropriate in every case, it is here. Worley seeks, in part, a declaration "[t]hat Braskem is obligated to and must pay to Worley all amounts claimed by DPC to the extent awarded to DPC in the DPC Action." (Third-Party Compl. at 8 (Count II, Wherefore clause, section b).) This claim is permitted and proper under Federal Rule of Civil Procedure 14(a)(1). Worley must allege that Braskem is or may be liable to it for all or part of DPC's claim against Worley. Fed. R. Civ. P. 14(a)(1). It does just that with its request for a declaration that Braskem must pay it "all amounts claimed by DPC to the extent awarded to DPC in the DPC Action." (Third-Party Compl. at 8 (Count II, Wherefore clause, section b).) Worley's claim for declaratory relief against Braskem may proceed because it depends on the outcome of DPC's claim against it. Permitting Worley to join Braskem lets Worley "bring all parties to the table to address any damages asserted by and between DPC, Worley and Braskem solely related to the claim asserted by DPC." (Worley Sur-Reply, at 7.) Joinder is proper under Rule 14.

**b.  Rule 18**

Worley may pursue its breach of contract claim and the other declaratory relief it seeks in this action under Federal Rule of Civil Procedure 18(a), which provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Worley has

alleged a "valid third-party claim," arising out of the same transaction or occurrence as the claims alleged in DPC's original complaint, which is the only predicate to bringing its independent claims against Braskem under Rule 18(a). *See Schwab v. Erie Lackawanna R.R. Co.*, 438 F.2d 62, 68-70 (3d Cir. 1971) (Rule 18(a) allows the defendant with a valid Rule 14(a) claim to make an affirmative claim for relief against the third-party defendant as long as the court has jurisdiction over the latter claim, jurisdiction described as arising from the same transaction or occurrence as the Rule 14(a) third-party claim)); *see also Ford Motor Co. v. Edgewood Props.*, *Inc.*, No. 06-1278, 2007 WL 4526594, at *10 (D.N.J. Dec.18, 2007) ("Once at least a single proper Rule 14(a) claim is alleged, a third-party plaintiff may join as many Rule 18(a) claims as it elects.").

## B.     Ripeness: Rule 12(b)(1)

A court must dismiss any claims over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Braskem contends Rule 12(b)(1) requires the Court to dismiss Worley's Third-Party Complaint because Worley's claims seeking a defense, indemnification, and reimbursement of its legal fees and costs in defending against DPC's claims are not ripe. Its ripeness challenge "'is appropriately brought as a motion to dismiss for lack of subject matter jurisdiction'" under Rule 12(b)(1). *Berger v. Cushman & Wakefield of Pa., Inc.*, No. 13-5195, at *2 (E.D. Pa. Mar. 11, 2016) (quoting *Save Ardmore Coal. v. Lower Merion Twp.*, 419 F. Supp. 2d 663, 669 (E.D. Pa. 2005)). Motions invoking Rule 12(b)(1) generally fall into two categories: facial attacks and factual attacks. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Braskem's ripeness challenge to Worley's claims is a facial jurisdictional challenge. *Berger*, 2016 WL 8716244, at *2 ("[A] ripeness challenge is a facial attack . . . ."). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and [ ] requires the court to 'consider the allegations of the complaint as true.'" *Davis*, 824 F.3d at 346 (quoting *Petruska v.*

*Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). The Court can rely on documents referenced in and attached to the pleadings, "but must view them in the light most favorable to the nonmoving party," i.e., Worley. *Berger*, 2016 WL 8716244, at *2 (citations omitted).

Ripeness works "to determine whether a party has brought an action prematurely . . . and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003). Third-party claims that depend on or are derivative of the success of a party's claims in underlying litigation are not necessarily premature. *See, e.g. Milo, LLC v. Procaccino*, No.16-5759, 2020 WL 1855117, at *3 (E.D. Pa. Apr. 13, 2020) (declining to dismiss an indemnification claim for lack of ripeness); *Mount Pocono Mun. Auth v. RKR Hess*, No. 20-1105, 2021 WL 3674639, at *3 (M.D. Pa. Aug. 20, 2021) ("[C]ourts in this circuit routinely permit third-party indemnification and contribution claims before the prime obligation to pay materializes."). "[R]esort to impleader has the effect of accelerating the determination of the third-party defendant's liability." 6 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1451 (3d Ed. 1998, Apr. 2022 Update).

### 1.      Worley's Declaratory Judgment Claims Are Ripe

Braskem argues Worley's declaratory judgment claim is not ripe because their respective obligations under the Master Contract "could only be triggered after the litigation between Worley and DPC has been adjudicated." (Braskem Br., at 5.) But Rule 14(a) does not require Worley to establish Braskem's liability to pursue its third-party claim. *See Castle Cheese, Inc. v. MS Produce, Inc.*, No. 04-878, 2008 WL 4372856, at *43 (W.D. Pa. Sept. 19, 2008). In other words, Worley "need not await the outcome of [DPC's] claim against it before asserting an indemnity claim against" Braskem. *Id.* "The very nature of third-party practice subjects it to contingencies; that is,

the third party plaintiff's harm is contingent upon the outcome of the underlying action and, thus, the third-party defendant's potential liability is likewise contingent upon the third party plaintiff's underlying liability." *State Coll. Area Sch. Dist. v. Royal Bank of Can.*, 825 F. Supp. 2d 573, 583 (M.D. Pa. Nov. 18, 201); *see also Cont'l W. Ins. Co. v. ASAP Hauling LLC*, No. 20-04063, 2021 WL 150017, at *3 (W.D. Mo. Jan. 15, 2021) ("Often the impleading party's liability will not yet be established at the time that the third-party complaint is filed because the original plaintiff's claims will not yet have been fully adjudicated.").

In the context of a third-party claim for a declaratory judgment, the "challenge" is that the decision sought "is simply whether or not certain rights or duties exist," not whether there is a "claim in which the original defendant may be 'liable,' in the usual understanding of the word, to the plaintiff." *Navigators Ins. Co. v. Univ. of Louisville Found., Inc.*, 329 F.R.D. 557, 561 (W.D. Ky. 2019) (acknowledging that "Courts have differed on their application of Rule 14 in this context"). Ultimately, the relevant question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Worley is right that: (1) harm will result if the declaratory judgment is not entered; (2) a declaratory judgment will be conclusive in establishing "whether Braskem is required to pay the defense costs and reimburse Worley with respect to DPC's claims"; and (3) "entry of a judgment would be practical and useful to both Worley and Braskem" by allowing the parties to resolve all the claims at once. (Worley Resp., at 8-10.) *See Step-Saver Data Sys. v. Wyse Tech, Inc.*, 912 F.2d 643, 646-47 (3d Cir. 1990). Worley's declaratory judgment claim turns on actions that Braskem and DPC have already undertaken and does not depend on the future action of a party not before

the court.  It is ripe for determination.[4]

### 2.    Worley's Breach of Contract Claims Are Ripe

Braskem argues Worley's breach of contract claim is not ripe because it is based only on

an "anticipatory breach of the Master Contract" that has not yet occurred. (Braskem Br., ECF 21-

1 at 4.) It contends the litigation between Worley and DPC must be adjudicated before any

obligations it might have to Worley can ripen, i.e., that DPC must prevail on its underlying delay

claim before Worley can seek any recourse against Braskem. (*Id.* at 5.)

Worley responds that its defense of DPC's claim for delay costs arising from the COVID-

19 pandemic "on behalf of Braskem" is not contingent on the outcome of DPC's claim. (Worley

Sur-Reply, at 2-3.) In its view, there "are significant attorneys' fees, costs and expenses for which

Braskem has agreed to reimburse or 'indemnify' Worley that are due and payable immediately,"

i.e., there are non-contingent costs arising from the COVID-19 related project delay. (Worley

Resp. to Braskem Mot., ECF 23 at 4-5.) Worley cites language in Schedule D-1 of the Master

Contract that obligates Braskem to reimburse Worley for "Contractor and third-party lawyers'

fees, court costs and related litigation expenses when incurred on behalf of or for the benefit of

[Braskem]" in addition to "[a]ll other costs and expenses reasonably incurred by [Worley]

specifically related to the Project." (*Id.* (citing Worley Resp. Ex. 1 at 8-9); see also Third-Party

---

[4]       Braskem also argues that even if the declaratory judgment claim were ripe, it is improper
because Worley's only remedy "for Braskem's breach of any reimbursement or indemnification
obligations it owed to Worley would be an action at law for damages" instead of an equitable claim
seeking specific performance. (Braskem Br., at 5-6.) At this stage of the litigation, the Court
declines to dismiss the claim for declaratory relief because the Third-Party Complaint leaves
unclear the extent of any overlap between it and the contract claim. (Worley Resp., at 11.) *See
Greenwald Caterers Inc. v. Lancaster Host, LLC*, No. 22-811, 2022 WL 1204154, at *24 (E.D.
Pa. Apr. 22, 2022) (declining to dismiss declaratory judgment claim where discovery would permit
a determination as to whether it was duplicative of breach of contract claim).

Compl., Ex. C (Master Contract), Schedule D-1, at ECF p. 189-90.)

Considering the allegations of the third-party complaint as true, Worley's breach of contract claim is ripe for determination. It hinges on actions Braskem and DPC have already undertaken and is not dependent on the future action of a party not before the Court. A lawsuit has actually been filed against Worley and whether Braskem has an obligation to reimburse Worley for the costs of this litigation is a live question under the Master Contract's language regarding reimbursement for "costs and expenses reasonably incurred by [Worley] specifically related to the Project." *Id.* Even if a portion of Worley's third-party claim remains contingent because the costs of indemnification, if any, are not yet fixed, "some third party actions may be commenced in the interest of judicial economy before they are technically ripe." *Hatco Corp. v. W.R. Grace and Co.*, 59 F.3d 400, 406 (3d Cir. 1995). To hold otherwise "would wholly obviate the purposes of third-party practice . . . ." *Berger*, 2016 WL 8716244, at *3-4 (internal quotations omitted).

### C.      Failure to State a Claim: Rule 12(b)(6)

To satisfy Federal Rule of Civil Procedure 12(b)(6), Worley's Third-Party Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he plausibility determination is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (quoting *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016)). The Court "affirmatively disregards" legal conclusions in the [Amended] Complaint, assumes all remaining factual allegations to be true, construes those truths "in the light most favorable to the plaintiff," and draws "all reasonable inferences" from them. *Connelly*, 809 F.3d at 790. A claim is facially plausible when the facts pled "allow[ ] the

court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the [Third-Party C]omplaint has alleged—but it has not 'show[n]'—'that [Worley] is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

### 1.    Effect of Final Payment

Braskem argues Worley's claims must be dismissed because Worley "unequivocally waived and released its right" under the Master Contract to pass DPC's alleged losses through to Braskem when Worley "accepted final payment from Braskem . . . ." (Braskem Br. at 6-7.) Article 9.7 of the Master Contract required any final invoice from Worley to "be accompanied by an executed release of liens in the form attached as Exhibit H to [the Master] Contract and the delivery of the final Project Documents to [Braskem's] Procurement Representative." (Worley Br. at 14.) Braskem argues Worley's claim fails because Exhibit H "releases Braskem from any further claims for payment by Worley." (Braskem Br. at 7.) However, Worley alleges it never signed a Project release and Exhibit H required a signature. (Worley Answer to DPC Compl., ¶ 28.) Worley argues "Braskem's contention that it 'closed out' the project by receiving final payment is at best disputed if not unsupportable." (Worley Br. at 14.) Braskem's argument requires the Court to resolve factual disputes in its favor which is inappropriate at this stage. Viewing the allegations in the light most favorable to Worley, the Court will not dismiss its claims on the basis that Worley has waived or released them under Article 9.7 of or Exhibit H to the Master Contract.

### 2.    Reimbursable Expenses

Braskem also argues the Master Contract's terms do not allow Worley to recover the costs

and expenses it seeks. (Braskem Br. at 8-11.) Braskem maintains Worley fails to state a breach of contract claim against it because "DPC's alleged losses were caused by COVID-19" and the Master Contract's terms only require Braskem to defend and indemnify Worley "against Losses arising out of Third-Party Claims for death, personal injury, or property damage to the extent caused by the deliberate, reckless or negligent acts or omissions of [Braskem], its employees, or agents in connection with the Project." (*Id.*; *see also* Third Party Compl., Ex. C (Master Contract), § 12.4.1 at ECF p. 116.) Responding to Braskem's motion, Worley does not dispute the existence of this provision in the Master Contract (although its Third-Party Complaint omits the limiting language in section 12.4.1). (*Cf.* Third Party Compl. ¶ 12.) Instead, it contends its Third-Party Complaint alleges a breach of contract claim based on an enforceable contract that requires "certain payments to Worley and DPC"—i.e., "Other Reimbursable Costs"—and Braskem's breach of the Master Contract through its refusal to make or acknowledge the contractually required payments, "resulting in current and anticipated damages to Worley." (Worley Resp., at 1, 4-5, 13, 16; *see also* Worley Resp. Ex. 1 at 8-9; Third-Party Compl. ¶¶ 38-39.) Braskem, however, argues Worley's claim demanding reimbursement for DPC's claim against Worley is not covered under the Master Contract's provisions governing reimbursable costs. (Braskem Br. at 9.)

The Master Contract identifies "Other Reimbursable Costs" that Braskem must pay to Worley as including "Contractor and third party lawyers' fees, court costs and related litigation expenses when incurred on behalf of or for the benefit of [Braskem]" and "[l]osses, expenses and deductibles in connection with the Project and not paid by insurance or otherwise reimbursed." (Third Party Compl., ¶ 13; *see also id.*, Ex. C (Master Contract), Schedule D-1, at ECF p. 189-90.) Braskem argues the payments Worley claims it owes are not "Other Reimbursable Costs" due under the Master Contract because they are "attorney's fees and costs Worley might incur to

defend itself against the claims brought by its own subcontractor" which "are not in furtherance of the Project work and will not benefit Braskem." (Braskem Br. at 9.) It also argues Section 1.6 of Exhibit D to the Master Contract limits the payments Braskem owes to Worley for DPC's work to "amounts paid" for performance of work "pursuant to Subcontracts." (*Id.*; *see also* Third Party Compl., Ex. D (Owner's Compensation Policy and Procedure (EPC) Projects) to Ex. C (Master Contract), § 1.6 at ECF p. 178-79.) In support of its Motion, it also cites Section 3.1 of Exhibit D to the Master Contract which provides that "[a]ny costs not expressly identified as "Reimbursable Costs in this Exhibit D and any costs, expenses or rental rates which [Worley] fails to demonstrate to have been directly incurred in the performance of the Work and have prior approval by Owner will not be paid." (Braskem Br. at 9.; *see also* Third Party Compl., Ex. D (Owner's Compensation Policy and Procedure (EPC) Projects) to Ex. C (Master Contract), § 3.1 at ECF p. 182-83.)

In Braskem's view, it is only obligated "to pay Worley for subcontractor costs that: 1) are allowable under the terms of the applicable contract; and 2) Worley itself has paid." (Braskem Br. at 10.) It argues DPC is precluded from recovering the damages it seeks in its Complaint because in the Subcontract, DPC "expressly acknowledge[d] and agree[d] that it shall receive no damages for delay" and also that DPC's "sole remedy" against Worley for delay was "the right to seek an extension in the Subcontract Schedule." (*Id.* (quoting Worley Answer to DPC Compl., Ex. A (DPC Subcontract), § 8E, ECF 11 at ECF p. 27.) To back its argument, Braskem cites a series of cases decided either on motions for summary judgment or after a bench trial as support for the proposition that "a 'no damages for delay' clause is enforceable by an owner and serves as a complete bar to recovery on a subcontractor delay claim not arising out of any action or inaction on the part of the owner." (Braskem Br. at 10 (*citing Quinn Constr., Inc. v. Skanska USA Bldg., Inc.*, 730 F. Supp. 2d 401, 414 (E.D. Pa. 2010); *Guy M. Cooper, Inc. v. E. Penn Sch. Dist.*, 903

A.2d 608, 613 (Pa. Commw. Ct. 2006); *Lichter v. Mellon-Stuart Co.*, 193 F. Supp. 216, 221 (W.D. Pa. 1961)).) It then argues DPC is not entitled to recover delay damages caused by COVID-19 because Worley denied DPC's request for equitable adjustment on the grounds that "DPC's added costs were the result of DPC's own negligence and/or breach of the subcontract . . . ." (Braskem Br. at 11, *citing* Worley Answer to DPC Compl. ¶ 17.)

Worley argues its claims against Braskem can proceed because DPC's request for an Equitable Adjustment (along with resultant attorney's fees) is "[c]learly a Reimbursable Expense" incurred for Braskem's benefit, provided DPC ultimately proves its claim, and it is not otherwise barred by the provisions of the Master Contract and Subcontract. (Worley Br. at 16; *see also id.* at 4; Worley Reply at 7-8.) Worley argues Braskem ignores DPC's argument that, "when Braskem elected to make payment for expenses of similar nature during the epidemic shutdown," any provisions in the DPC subcontract prohibiting compensation for the damages it now seeks to recover were waived. (*Id.*, *citing* DPC Compl. at ¶¶ 24-25.) Worley also contends that if a "condition precedent" to its recovery of Reimbursable Expenses under the Master Contract was "making a payment that was denied by Braskem," Braskem cannot use any failure to pay as a defense to its claims because, in Worley's view, Worley was prevented from making such a payment to DPC when Braskem rejected DPC's Request for Equitable Adjustment. (*Id.*) Worley further argues no facts alleged in the pleadings suggest that Worley "caused or contributed to the delays for which the compensation is sought." (*Id.* at 17.)

A motion to dismiss is intended to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Viewing the facts alleged in the light most favorable to Worley, the Court is satisfied that Worley has stated plausible claims for relief based on the Master Contract's terms pertaining to "Other Reimbursable Costs"—costs "incurred on behalf of

or for the benefit of [Braskem]" and "expenses . . . in connection with the Project . . . ." (Third Party Compl., Ex. C (Master Contract), Schedule D-1 at ECF p. 189-90.) Braskem's motion under Rule 12(b)(6) is denied.

### C.    Motion to Strike Jury Demand

Absent the dismissal of Worley's claims, Braskem asks to strike Worley and DPC's demands for a jury trial, arguing both voluntarily waived their right to have a jury resolve their claims. (Braskem Mot. at 11-12.) Section 14.2.2 of the Master Contract provides that "both parties expressly waive the right to jury trial in any legal proceeding in any way arising out of or related to this contract. (*Id.* at 11-12.) Braskem argues Worley's claims are "expressly subject to the waiver" because "they assert a breach of the Master Agreement." (*Id.* 12.) It argues DPC is bound by the waiver as well because it alleges its claim arises out of the Master Contract. (*Id.*) Section 16.B of the Subcontract provides that if Worley elects to present a "claim to Owner under the Dispute clause of the Master Contract, [DPC] shall be bound by the dispute resolution procedures set forth in the Prime Contract." (*Id.* at 12.) Worley's brief does not respond to Braskem's request to strike the jury demand.

"The Seventh Amendment creates a right to civil jury trials in federal court." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 247 (3d Cir. 2013). "Although a court should indulge every reasonable presumption against waiver, parties may contractually waive their right to a jury trial." *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, No. 12-00521, 2013 WL 12147688, at *2 (D.N.J. Aug. 14, 2013). To enforce the jury waiver clause in the Master Contract, the Court must find that: (1) there was not a gross bargaining power disparity between the parties; (2) the parties are sophisticated business entities; (3) the parties had an opportunity to negotiate the contract terms; and (4) the waiver provision was conspicuous." *U.S. Bank, Nat'l Ass'n v. Rosenberg*, No. 12-723,

2014 WL 2439427, at *1 (E.D. Pa. May 30, 2014). The party seeking to enforce a jury waiver has the burden to show the waiver is valid. *See Brown & Brown, Inc. v. Cola*, No. 10-3898, 2011 WL 4380445, at *4 (E.D. Pa. Sept. 20, 2011).

Given the presumption against waiver, Braskem's one-sided assertions that there was no disparity in bargaining power and that the parties had a sufficient opportunity to negotiate the terms of the jury waiver provision are not enough to permit the Court to determine whether to enforce it. Braskem's request to strike the jury demand is denied without prejudice to renewal before trial.

## III.   <u>CONCLUSION</u>

Ultimately, Worley's claims are not premature, but the resolution of Braskem's defenses to Worley's claims is. While Worley's claims for breach of contract and a declaratory judgment may not succeed after discovery, the factual record must be further developed before the Court can make that determination. Braskem's Motion is denied.

An Order consistent with this Memorandum will be docketed separately.